# Jonathan Horn, Admr. of George Buck, Deceased, Plff. in Err., v. James Monroe Buck.

In assumpsit by an executor for the unpaid balance of purchase money of land conveyed by the testator to his son, the question whether the son was to pay the full money consideration mentioned in the deed or was to have the land partly as a gift is a question for the jury.

(Argued March 2, 1887.  Decided March 14, 1887.)

January Term, 1887, No. 221, E. D., before MERCUR, Ch. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.  Error to the Common Pleas of Berks County to review a judgment on a verdict for the defendant in an action of assumpsit.  Affirmed.

The facts as they appear at the trial in the court below were stated in the charge to the jury, which was as follows:

This action is brought by Jonathan Horn, administrator of George Buck, deceased, against James M. Buck, to recover from him the purchase money of a farm, for which a deed was given on the first of April, 1881, to the said George Buck, for the sum of $5,813.44.

The evidence discloses that in 1879 the defendant, James Buck, came to Jacob A. Fister, who was then a justice of the peace in Albany township, requesting him to draw a deed from his father, George Buck, to himself, for the farm on which they were then living, at the rate of some $45 an acre.

Such a deed was drawn, and was taken by Fister over to old Mr. Buck, and there are two different statements in regard to what occurred there.  Fister stated that the old man said he was not ready to sign the deed yet; there was no bond or mortgage there.  The daughter says that the old gentleman declined to sign it because he said it was too dark.  At all events it was not signed at that time.  The matter was then postponed, and it

---

·NOTE.—Where there is any evidence to show that the property was transferred by the decedent as a gift, the question is for the jury.  Patterson v. Dushane, 115 Pa. 334, 8 Atl. 440; Flanigan v. Flanigan, 115 Pa. 233, 9 Atl. 157; Jacques v. Fourthman, 137 Pa. 428, 20 Atl. 802; Osterhout's Estate, 148 Pa. 223, 23 Atl. 1069; Kulp v. March, 181 Pa. 627, 59 Am. St. Rep. 687, 37 Atl. 913.

was not until the first of April, 1881, when James M. Buck, the defendant, came to Fister and told him that they were now ready to have the deed executed. They went over to see the old man, and then some conversation took place between the old man and the young man in the presence of Fister. Fister saw no money on that occasion, nor is it claimed upon the part of the defendant that the money was paid down at that time. It seems that there was a claim of one Beaver, from Kutztown, a judgment of some $697, away back in June, 1876. Precisely what took place in the conversation between the old gentleman and James is not very definitely sworn to except as to a part of it; but the young man said if the deed was fixed, he could raise the money to pay the claim, and if it was not fixed the sheriff would come. Then the old gentleman said: "If that is so it must be fixed;" and the deed was then signed.

This is the testimony given by Mr. Fister, and from this the plaintiff claims that there was no money paid, and that the son was bound to pay the consideration money of this property at some future time. He gives in evidence, as a matter of corroboration, the judgment which was held by Joshua Beaver against George Buck, of what is known as June term, 1876, for $697.40. That judgment was satisfied on the 8th of April, 1881, shortly after this deed was given. There was a mortgage given on the 5th of April, 1881, by James Buck, the son, to Jeremiah S. Trexler, of Kutztown, for $900. It is claimed on the part of the plaintiff that the proceeds from the mortgage went to pay the judgment of Beaver's. Now that is not all the testimony that is submitted upon the part of the plaintiff to show that the defendant in this case is responsible for the consideration money of that deed. He gave in evidence the inventory that was taken after the old man's death, which showed an estate of only $5.63; in other words, that the old gentleman left no estate. He claims that there were no other debts, which he knew of, that the old gentleman owed, and that there was no other money paid by the defendant except the $900, which it was necessary to raise for the purpose of paying off the claim of Beaver.

The defendant presents, as it were, two grounds of defense: The first is that he has actually paid for this land, the payments running through a number of years. His daughter, Isabella, was present when the deed was signed, as she is one of the witnesses

to the deed; and she states that at that time her grandfather said: "Now this land belongs to you. Now take care of it. You have paid more than this." She says her grandfather had a book. Her father had paid him money some three or four times that she had seen. They had a settlement together a few days after this deed had been executed, and the old gentleman's remark at that time was: "Now you take care of this land. You have paid more than this for it," and that the book with other papers was thrown into the fire and burned after that. That is her statement in regard to it.

William Miller was called. He says: "I knew George Buck, the father of the defendant. Soon after the defendant had bought the property he said I should buy a piece of this land from Monroe, that the land was his and he could pay what he owed Beaver. I knew that Monroe had bought half a year, or a year, or a month after Monroe had bought the property. I bought from Monroe and paid him cash for it. I bought and paid him $1,000."

Now this was offered for the purpose of showing that the old gentleman said to William Miller that the land was his son's, and that the son still owed some debts or had some obligations to pay, and that by his purchasing this property, the son could "pay off his indebtedness." Daniel Miller, who was the brother-in-law of the defendant, and who was the administrator of his father, says that he paid some $1,700 to Buck's wife, who was his sister, less $500, which had been advanced previously. This was offered for the purpose of showing that there was money in the possession of the son and his wife, from which they could have made advancements to the old gentleman.

[Maria Wharton was also examined. She says that she knew George Buck, that is the old gentleman; saw him often about a year before he died, and had a talk about the farm. He said Monroe had bought the farm. He did not say what he paid. He said he gave it to them, it was all theirs. Now that testimony is offered for the purpose of showing that the old gentleman gave the farm to the son and that the deed was the conveyance of a gift. That is, it gave the title by giving the deed and the possession of the property; that it was a gift of this property to his son.]

John Kemp was called, who was once tax collector, and he said he had a talk with the old gentleman about the tax, and the old gentleman said to him that he had sold to Monroe.

Rebecca Miller was examined. She says that she knew the old man, and had heard him say: "I gave my house to Monroe;" and that he was to pay his debts, and if he did not take care of it he could not help it. He always said it was his. He said Monroe had to pay his debts.

Now that is all that there is in this case. You start with this deed. [There is a receipt in the deed acknowledging the receipt of the consideration money of this property. That, in the first instance, would be regarded as proof that the money had been paid, or if not paid, that the party had actually given the property and made use of this deed as the means of effecting that gift.] Then you have the testimony of the others to whom I have referred, the daughter, and these other witnesses whose testimony I have read to you, and you are to consider the whole evidence and find this fact: Did Monroe pay for this property? Has the plaintiff shown you such evidence as would induce the jury to believe, that at that time when this property was conveyed to Monroe the old man intended this as a sale of the property, for the full consideration mentioned in this deed, and taking into consideration the other evidence, the evidence of Fister, was that to be paid by Monroe?

[Or, taking into consideration the other evidence in the cause, did the old man give this property to Monroe by this deed? Did he intend it, beyond the payment of his debts, as a gift to Monroe? Now just as you find these facts, so your verdict will be. If you find that Monroe was to pay the full consideration as mentioned in this deed, and if you find that he did not pay it, then for such sum as he did not pay the plaintiff will be entitled to a verdict with interest from the first day of April, 1881. On the question whether the old gentleman intended that Monroe should pay his debts, and that through this deed this property should be given to Monroe, you will take into account all the evidence to which I have referred, and any other evidence in the case which the jury will remember, to which I have not referred. If you find that the old gentleman intended to give this property to his son, James M. Buck, then your verdict will be in favor of the defendant.]

Verdict and judgment were for the defendant.

The assignments of error specified the portions of the charge inclosed in brackets.

*D. N. Schaeffer* and *Geo. F. Baer,* for plaintiff in error.—The consideration mentioned in the deed, as already stated, is a money consideration. Mrs. Wharton's testimony was not offered to show that this money consideration mentioned in the deed was a mistake, and that the old gentleman intended that the conveyance should be for another consideration, nor does her testimony warrant any such instruction.

The court had no right to instruct the jury, because she testified that the old gentleman said that the property belonged to Monroe, that they could find that the conveyance was a gift of the farm to the son. If any part of the consideration in the deed was for natural love and affection, that could have been shown by parol evidence. But the defendant offered no such testimony. He, however, could not show by parol evidence that there was no consideration of money, as that would be in direct contradiction of the deed. Hayden v. Mentzer, 10 Serg. & R. 333; Lewis v. Brewster, 57 Pa. 410; Buckley's Appeal, 48 Pa. 491, 88 Am. Dec. 468; Taylor v. Preston, 79 Pa. 436.

A receipt in a deed can only be either an acknowledgment of the payment of the consideration, or, after being varied or explained, the passing of a gift. It cannot be both. It must be the one or the other. A receipt is, like any other parol admission by the party, open to contradiction, explanation, or correction. It may be shown that it was given under a mistake, either of fact or law. Moore v. Com. 8 Pa. 260; Bell v. Bell, 12 Pa. 235; Russell v. First Presby. Church, 65 Pa. 15.

The same liberty extends to receipts indorsed in deeds. Whart. Ev. § 1065.

The court should therefore have instructed the jury that the receipt was only an acknowledgment of the payment of the money therein stated; and that having been rebutted by the plaintiff, the court should not have instructed them, without proof contradicting or explaining its contents, that they could also find that it was evidence of a gift of the property to the son.

*J. H. Marx* and *Garrett B. Stevens,* for defendant in error.— A conveyance made by deed of bargain and sale, although purporting to be for a consideration of money, may be shown to have been in part thereof intended and given as a present from father to son. Such evidence would be in necessary contradiction of the deed.

Hayden v. Mentzer, 10 Serg. & R. 333, decides merely that one cannot show that there was no consideration of money, as that would annul the deed. Such would, however, not be the case where the consideration proved is merely different from the one expressed in the deed. See also Jack v. Dougherty, 3 Watts, 151.

In Lewis v. Brewster, 57 Pa. 410, the consideration expressed in the deed was $300. The grantee was permitted to show that there was no money paid, that it was a gift to her, a daughter-in-law. The court said: "Evidence may also be given of a consideration not mentioned in a deed, provided it be not inconsistent with the consideration expressed in it. . . . If the deed appears to be a voluntary conveyance, a valuable consideration may be proved by parol. . . . And there seems to be no reason why what appears to be a valuable consideration should not be proved by parol to be a gift for a good consideration."

It is always esteemed unfair to select a single sentence or two in a charge and insist on it as error, without reference to other portions which explain its meaning and exhibit its bearing. We must look at the state of the case before the jury to determine its effect. Watts v. Cummins, 59 Pa. 88.

It is neither analysis nor criticism, but rude surgery,—mere amputation. Reeves v. Delaware, L. & W. R. Co. 30 Pa. 454, 72 Am. Dec. 713.

It would be treating the courts of common pleas and their suitors with great unfairness if we should take a detached sentence without reference to other parts of the charge and the testimony in the case. Kerr v. Sharp, 14 Serg. & R. 399; Carothers v. Dunning, 3 Serg. & R. 373.

The court is responsible for the general effect of the charge on the minds of the jury; and this is to be judged of, not by sentences culled here and there, but by salient points of the charge, and the thoughts that permeate it through and through. If as a whole the charge was calculated to misslead the jury, there is error on the record; if not, there is none. Reeves v. Delaware, L. & W. R. Co. 30 Pa. 454, 72 Am. Dec. 713.

PER CURIAM:

The uncontradicted evidence is that the defendant paid no money to his father at the time the deed was executed. The contention is whether he was to pay the full consideration mentioned

thereafter, or was the land a gift to the son. This is purely a question of fact for the jury, to which it was properly submitted.

Judgment affirmed.